IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| LEDON RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SMART PAY LEASING, INC. d/b/a ) | |
| SMARTPAY EVERYDAY LEASING, ) | |
| ) | |
| Defendant. ) | Civil Action No. 3:16-CV-2266-C |

## ORDER

On this day, the Court considered:

(1) Defendant Smart Pay Leasing, Inc's (Smart Pay) Motion to Dismiss and Compel Arbitration, filed December 12, 2016;

(2) Plaintiff Ledon Richardson's Opposition to Defendant's Motion to Dismiss and Compel Arbitration, filed December 27, 2016; and

(3) Defendant Smart Pay's Motion for Leave to File Reply in Support of Motion to Dismiss and to Compel Arbitration, filed January 10, 2017.

Having considered the forgoing, the Court is of the opinion that Defendant's Motion for Leave to File Reply should be **DENIED**[1] but that Defendant's Motion to Dismiss and Compel Arbitration should be **GRANTED**.

## I. BACKGROUND

This civil action arises from a dispute between Plaintiff Richardson and Defendant Smart Pay concerning allegedly improper debt collection practices. Richardson leased a smart phone, memory card, and case from Smart Pay pursuant to a Lease-Purchase Agreement (the Agreement) in June 2015. Smart Pay is a company that regularly leases such equipment to customers on a lease-to-own basis, allowing the customer to make fixed, scheduled payments towards a purchase over time. Richardson's complaint alleges that, beginning in late 2015 or early 2016, Smart Pay called him multiple times a day through an automatic telephone dialing system in reference to his account balance. Richardson complains that this conduct was improper and has asserted a single cause of action for violation of the Telephone Consumer Protection Act, thereby invoking federal-question jurisdiction. Smart Pay asserts that

---

[1] The Court would have permitted Defendant to file its Reply, except that a significant error on the first page has caught the Court's attention and raised a serious concern. In the third paragraph of Defendant's proposed Reply Brief, Defendant cites to the "controlling standard articulated by the Texas Supreme Court" and then provides a quote from *In re Poly-America*, 262 S.W.3d 337, 349 (Tex. 2008). Defendant again uses this quote on the second page, in the first paragraph of its Argument section, providing the same case citation. But this quote does not exist; it is not a quotation from the *In re Poly-America* case, nor is it exact language that has ever been published by the Supreme Court of Texas in any other case as far as this Court can discern. Regardless of whether this was an intentional effort by Defendant to misrepresent these words as a direct quote or the result of a careless research or drafting error, the severity of such a mistake calls into question the credibility of the entire brief. The Court therefore refuses to accept the Reply or consider its arguments.

Richardson's claim is subject to an arbitration agreement between the parties. It has filed the present motion seeking to dismiss this lawsuit and compel arbitration pursuant to that agreement.

## II. STANDARD

Federal law mandates that written arbitration agreements in contracts evidencing a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, such agreements are valid so long as they meet "the requirements of the general contract law of the applicable state." *In re Poly-America, LP*, 262 S.W.3d 337, 347 (Tex. 2008). Thus, when examining whether an arbitration agreement is valid and enforceable, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

## III. DISCUSSION

The Agreement between the parties contains a clear and unequivocal arbitration clause that requires the parties to arbitrate any dispute arising under the Agreement except for small claims that could be brought in a small claims court (such claims are expressly exempted from the arbitration clause by a separate paragraph). The relevant language from the Agreement reads as follows:

> 20. ARBITRATION. You and we agree that any claim or dispute arising from or in any way related to the Agreement must be resolved by binding arbitration instead of a lawsuit. This agreement to arbitrate will be governed by the federal Arbitration Act, 9 U.S.C. Sections 1–16 and the substantive law of your state.
> . . . The arbitrator's decision will be final and binding on both parties.

Br. in Supp. of Def.'s Mot. to Dism., Ex. A at 5. The Agreement also contains a warning (printed in all-caps font) to the lessee about the legal rights that they are waiving by agreeing to arbitration and further includes a provision allowing the lessee to opt out of the arbitration clause without any consequence to the underlying Agreement. Those provisions read as follows:

> BY AGREEING TO ARBITRATE DISPUTES, YOU ARE WAIVING YOUR RIGHT TO A TRIAL BY JURY. YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT RESOLVE YOUR DISPUTE. YOU ARE WAIVING YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT. YOU ARE WAIVING YOUR RIGHT TO CERTAIN DISCOVERY RULES THAT APPLY IN A LAWSUIT.
>
> Your Right to Opt Out: If you decide that you do not want to arbitrate any dispute(s) with us, you must notify us in writing at our address in the Agreement no later than 10 days after the date you sign the Agreement. Your decision to opt out of this arbitration will not affect your Agreement with us.

Br. in Supp. of Def.'s Mot. to Dism., Ex. A at 5–6.

Smart Pay argues that Richardson's acceptance of the Agreement's terms, combined with his failure to exercise his right to opt out, creates a valid and enforceable arbitration agreement between the parties that requires dismissal of this civil action in favor of mandatory arbitration. Richardson does not dispute the existence of the Agreement or his acceptance of its terms but instead argues that the arbitration clause is unenforceable because it is contrary to the public policy of the State of Texas, is unconscionable, or both.

**A. This Court's Ability to Hear Plaintiff's Challenge**

It must first be decided, in light of the parties' agreement to arbitrate all disputes *in any way related to* the Lease-Purchase Agreement, whether this Court has jurisdiction to even

4

consider Richardson's arguments about the enforceability of the arbitration clause. The Fifth Circuit has held that, "where the existence of the contract is not in question, the court must examine whether the allegations made by the party resisting arbitration challenge the 'making of the agreement to arbitrate itself' as opposed to 'allegations regarding the contract as a whole.'" *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004). Where the allegations involve only the arbitration term itself and are not generally related to the underlying contract, the court may exercise jurisdiction over the controversy and decide whether the arbitration clause is enforceable. *Id.* But if a defense to arbitration does not specifically relate to the arbitration agreement, then the enforceability of the arbitration clause must be submitted to the arbitrator as part of the parties' underlying dispute. *Id.*

In this case, Richardson's only arguments are that the arbitration clause itself is invalid because it is either unenforceable as contrary to public policy or as unconscionable; he does not dispute the validity of the underlying Agreement or make any other arguments that are related to the Agreement. Therefore, the Court concludes that it has the power to decide whether the arbitration clause is enforceable and this issue need not be submitted to the arbitrator under the parties' Agreement. *See Hill*, 367 F.3d at 430; *see also Inv. Partners, L.P. v. Glamour Shots Licensing, Inc.*, 298 F.3d 314, 316 (5th Cir. 2002) (discussing appellate jurisdiction to consider enforceability of an arbitration clause when challenge was raised on public policy grounds); *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 487–88 (5th Cir. 2002) (referencing a challenge to an arbitration clause on the grounds of unconscionability as an example of a court's proper intervention in the arbitral process).

## B. Enforceability of the Arbitration Clause

Both of Richardson's challenges to the enforceability of the parties' agreement to arbitrate arise from that agreement's provision concerning the allocation of attorneys' fees and costs at arbitration. The relevant language reads:

> If you file a claim against us, we will pay the initial filing fee. Each party must pay its own attorneys' fees and other costs of the arbitration. *However, the arbitrator can award reasonable attorneys' fees and costs to the party who wins the arbitration.*

Br. in Supp. of Def.'s Mot. to Dism., Ex. A at 5 (emphasis added). Richardson contends that this final sentence renders the entire arbitration agreement unenforceable with respect to his claim.

### 1. Public Policy of the State of Texas

Richardson first argues that the attorneys' fees provision is contrary to public policy. Texas law has long recognized a strong public policy in favor of preserving the freedom of contract. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008). As such, courts "must exercise judicial restraint in deciding whether to hold arm's-length contracts void on public policy grounds." *Id.* (quoting *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001)). To avoid infringing on the legislative branch—whose job it is to define the public policy of the State—courts should not characterize agreements as being contrary to public policy (and therefore invalid) "unless the [agreement] contravenes some positive statute or some well-established rule of law." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 504 (Tex. 2015) (quoting *Lawrence*, 44 S.W.3d at 553).

Richardson has brought only a single claim against Smart Pay for violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§ 227, *et seq.*, and the TCPA does not

6

authorize a recovery of attorneys' fees from a plaintiff (even when a defendant is a prevailing party). Richardson thus argues that "[b]y adding a new substantive claim for attorney fees that can also be asserted by the Defendant as a counterclaim, the Defendant's arbitration clause significantly changes the rights of the parties" and increases the risk of litigation, effectively operating to chill claims. Pl.'s Opposition to Def.'s Mot. to Dism. 5–6. But the Court finds this argument to be meritless and misguided.

It is true that the agreement authorizes a *potential* recovery of attorneys' fees by the prevailing party in arbitrations over the Lease-Purchase Agreement. However, the arbitration agreement does not mandate an award of fees or state that the prevailing party will always be entitled to fees in every arbitration. Instead, it states only that the arbitrator *can* make an award, implying that discretion is left to the arbitrator to apply the relevant law to a particular arbitration and determine if an award is appropriate. Richardson focuses only on the particular statute that he has elected to invoke in this case, which does not provide for an award of attorneys' fees. But other statutes do provide for the recovery of fees by a prevailing party, such as the Fair Debt Collection Practices Act or the Texas Fair Debt Collection Practices Act, and the arbitrator would be well within his rights to award attorneys' fees under one of those statutes if a plaintiff chose to bring such claims and the arbitrator determined that the fee award was warranted. 15 U.S.C. § 1692k(a)(3); Tex. Fin. Code § 392.403(b). Just because Richardson chose to file suit only under the TCPA does not mean that the entire arbitration clause is void—it simply affects the law that the arbitrator will examine and apply when deciding this particular case and determining whether the prevailing party is legally entitled to recover attorneys' fees. As for any concern that the arbitrator may improperly make an award where the statute does not authorize it,

this is merely speculative harm that is not ripe for adjudication; any error by an arbitrator in the future would be the subject of a motion to set aside the arbitration award rather than a defense that the arbitration clause itself is void as against public policy.

### 2. Unconscionability

In the alternative, Richardson argues that the same attorneys' fees provision is unconscionable. Unconscionable contracts, including agreements to arbitrate, are unenforceable under Texas law. *In re Poly-America, LP*, 262 S.W.3d 337, 348 (Tex. 2008). "Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). Generally, a contract clause is unconscionable (and therefore unenforceable) if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001).

Richardson raises a substantive unconscionability challenge, asserting that the arbitration provision is unfair because it creates a potential counterclaim for the Defendant's attorneys' fees that is not authorized by the TCPA. The Court finds this argument unpersuasive for the same reasons discussed above in reference to the public policy challenge.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that nothing about the parties' arbitration agreement is contrary to public policy or unconscionable. Having ruled against Richardson on

these arguments, and in light of the otherwise valid agreement of the parties to arbitrate all disputes related to their Agreement, the Court is of the opinion that Defendant's Motion to Dismiss and Compel Arbitration should be **GRANTED**.  Accordingly, the above-styled and -numbered civil action is **DISMISSED without prejudice** and the parties are **ORDERED** to arbitrate their dispute pursuant to their Agreement.

SO ORDERED this 24th day of January, 2017.

_____
SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE